**WOODS MFG. CO., Limited, et al. v.
CANADIAN PAC. RY. CO.**

No. 66.

Circuit Court of Appeals, Second Circuit.

Nov. 9, 1945.

Bigham, Englar, Jones & Houston and John W. R. Zisgen, all of New York City, for appellants.

Hardin, Hess & Eder and Monroe Collenburg, all of New York City, for appellee.

Before L. HAND, SWAN and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This appeal presents the question whether by the law of England and under the terms of the bills of lading covering goods of the libellants which were lost by the sinking of the carrying vessel, the libellants are entitled to recover any part of the prepaid freight.

The facts are not in dispute. Each bill of lading provided that claims arising under it should be settled according to the law of England. Proof of the English law was made by the respondent, and all the other facts were stipulated. The libellants were owners of fifteen parcels of goods which were shipped by merchants at Calcutta, India, in October, 1939, for transportation to Vancouver, British Columbia. For each shipment a through bill of lading was issued to the shipper by the respondent,

by its Calcutta agents, Mackinnen, Mackenzie & Co., reciting shipment of the goods on board the S. S. "Sirdhana" and providing for carriage on this vessel to Hong Kong and for transshipment there to a vessel of the respondent for on-carriage to Vancouver.[1] The Sirdhana was owned by the British India Steam Navigation Company, Ltd.; and on the dates respectively on which the respondent's through bills of lading were issued to the shippers, Mackinnen, Mackenzie & Co., as agents of the vessel-owner, issued the latter's bills of lading to the respondent to cover the carriage from Calcutta to Hong Kong. On behalf of the libellants the total through freight to Vancouver was paid to the respondent on each shipment and one-third thereof was paid to the British India Company as that company's proportion[2] of the through freight for carriage of the goods from Calcutta to Hong Kong. After leaving Singapore en route to Hong Kong, the Sirdhana struck a mine and sank with all her cargo. Hence none of the 15 shipments was ever transshipped at Hong Kong to a vessel of the respondent; nor did the respondent ever have physical custody of the libellants' goods after they left Calcutta on the Sirdhana. And this vessel, the court found, was neither owned, chartered, hired or used by the respondent, nor was she working in or by arrangement with, or in connection with the respondent on the voyage on which she sank.

▉ To prove the English law the respondent submitted in evidence a number of authorities[3] and introduced the testimony of Mr. Laing, a London barrister. The trial judge found that "under the law of England prepaid freight is not recoverable when a ship is lost unless the contract of carriage provides expressly for the contrary." This finding of fact the appellants do not directly challenge as such, but their brief appears to attack it under Point V which is entitled "The law of England does not permit retention of prepaid freight unless the contract expressly or impliedly provides for such retention." This contention is based on the case of Fibrosa Spolka Akcyjna v. Fairbairn Lawson Combe Barbour, Ltd., [1943] A.C. 32, where the House of Lords reversed the so-called rule of the Coronation Cases—see Chandler v. Webster, [1904] 1 K.B. 493—and permitted recovery of an advance payment made on a contract the performance of which was frustrated by war, on the theory of a complete failure of consideration. As Mr. Laing, the London barrister, pointed out, the Fibrosa case recognizes the distinction between the rule governing prepaid freight and the rule governing advance payments on ordinary commercial contracts. This is borne out by the opinions of several of the Lord Justices. Thus the Lord Chancellor (Viscount Simon) at page 43 referred to "the ancient, and firmly established rule that freight paid in advance is not returned if the completion of the voyage is frustrated: Byrne v. Schiller", and expressed the view that the rule should be regarded "as a stipulation introduced into such contracts by custom, and not as the result of applying some abstract principle." And Lord Wright, at page 67, said that the law had been so laid down as long ago as 1682 "and has remained ever since." He also referred to Byrne v. Schiller and stated that "the irrevocable nature of the payment is there determined by custom or law, unless the contract provides for the contrary." Similarly Lord Porter, at page 79, treats the cases of advance freight as in a class by themselves and an exception to the ordinary rule of restitution when a contract becomes frustrated. Whatever the origin of the long-recognized doctrine of non-recovery of pre-

---

[1] Our opinion treats all fifteen of the through bills of lading as identical, although one of them provided for carriage of the shipment therein described on the S. S. Karoa from Calcutta to Singapore, to be there transshipped to the S. S. Sirdhana for on-carriage to Hong Kong, where the goods were to be transshipped to a vessel of the respondent for on-carriage to Vancouver. This shipment was transferred to the Sirdhana at Singapore. Both vessels were owned by the British India Steam Navigation Company, Ltd., and there is no need to differentiate between this shipment and the other fourteen.

[2] How this proportion was arrived at does not appear from the stipulation. The bills of lading issued to the respondent by the British India Steam Navigation Company, Ltd., do not mention any freight rate.

[3] The cases principally relied upon were Greeves v. West India & Pacific S. S. Co., 22 L.T.R. 615; Byrne v. Schiller, [1871] L.R. 6 Ex. 319, noted in XV Solicitor's Journal 834; and Fibrosa Spolka Akcyjna v. Fairbairn Lawson Combe Barbour, Ltd., [1943] A.C. 32.

paid freight,[4] and despite the criticism which judges applying it have sometimes voiced,[5] we find nothing in the Fibrosa case to indicate that the district court's finding of fact as to English law was incorrect. Decision of the present appeal must, therefore, turn on whether the district court erred in holding that the respondent's through bills of lading do not provide for return of the prepaid freight in the event of the goods being lost.

The appellants contend that the respondent was only a forwarding agent with respect to the voyage from Calcutta to Hong Kong, never received the goods as a carrier and hence never earned any prepaid freight. They rely primarily upon two clauses in the through bills of lading, clause EW 15 and an unnumbered clause appearing on the face of the document. Clause EW 15 is as follows: "Prepaid freight is earned on receipt of the goods by the Carrier and is not returnable whether goods or ship be lost or not."

The unnumbered clause reads: "It is agreed that each of the Carriers shall be responsible only for the goods whilst same are in their own personal custody. The arrangements for through carriage are made for the convenience of shippers, and the responsibility of each Carrier with regard to the carriage and storage by other means than its own vessel * * * is to be that of forwarding agent only, * * *."

But the appellants' construction of these clauses disregards others. On the face of each through bill of lading is the provision "Freight * * * to be paid at Calcutta up to Vancouver * * *"; and another clause, EW 22, reads in part as follows: "* * * freight if payable at any other place than at destination to be paid ship or goods lost or not lost and whether the voyage be complete or not, and to be due in full in exchange for Bill of Lading * * *."

These provisions clearly indicate that the entire ocean freight was to be prepaid at Calcutta in exchange for the bill of lading and regardless of completion of the voyage. Had the shippers' contracts of carriage been made with the owner of the Sirdhana and the freight prepaid in exchange for through bills of lading issued by it, the case would fall precisely within the decision of Greeves v. West India and Pacific Steamship Co., 22 L.T.R. 615. We think the principle of the Greeves decision equally applicable to the facts of the case at bar, where the only contract of carriage was made with the respondent. To the appellants' argument that the respondent never received the goods, there are two answers: With respect to prepayment of freight, delivery to the respondent of the British India Company's bills of lading would seem to be, as the district court held, equivalent to a receipt by the respondent of the goods themselves; and, secondly, by virtue of clause EW 1 which says that the expression "the Carriers" includes the owners of any carrying vessel, the EW 15 clause should be construed as if it read: "Prepaid freight is earned on the receipt of the goods by the owners of any carrying vessel and is not returnable whether goods or ship be lost or not."

Mr. Laing testified that in his opinion the libelants were not entitled under the English law and the terms of the bills of lading to recover the prepaid freight. His opinion was predicated on the assumption that the respondent's through bills of lading constitute a contract of carriage from Calcutta to Vancouver. The appellants assert that that assumption is contrary to the fact. We think not. The shippers made no contract of carriage with the owner of the Sirdhana; their only contract was with the respondent and the fact that the respondent's responsibility was limited

4 Anonymous Case (1683) 2 Shower 283, seems to be the earliest indication of the doctrine. In Allison v. Bristol Marine Ins. Co., [1876] 1 App.Cas. 209, at page 226, Justice Brett offered the following explanation of its origin: "Although I have said that this course of business may in theory be anomalous, I think its origin and existence are capable of a reasonable explanation. It arose in the case of the long Indian voyages. The length of voyage would keep the shipowners for too long a time out of money; and freight is much more difficult to pledge, as a security to third persons, than goods represented by a bill of lading. Therefore the shippers agreed to make the advance on what they would ultimately have to pay, and, for a consideration, took the risk in order to obviate a repayment, which disarranges business transactions."

5 For example, in Byrne v. Schiller, L. R. 6 Ex. 319, Cockburn, C.J. at p. 324; Byles, J., at p. 327; Keating, J. at p. 327; and Lord Selborne's comment in Allison v. Bristol Marine Ins. Co., [1876] 1 App.Cas. at p. 253, that the rule is certainly established "whether reasonable in the abstract or not."

to that of a forwarding agent until the goods should be transshipped to one of its vessels does not prevent its bills of lading from constituting contracts of carriage for the entire voyage. Such limitation of responsibility is customarily embodied in through bills of lading. See Thompson, Bills of Lading 20. Certainly the shippers could not have intended to have had the goods laden on the Sirdhana without obtaining any contract for their carriage until they should be transshipped at Hong Kong. Indeed, the through bills of lading recited shipment "on board the Sirdhana at the Port of Calcutta bound for Hong Kong and there to be transshipped", etc. The contract was for through carriage to Vancouver and reading all its clauses we think the intention is expressed to prepay the full freight whether or not the ship and cargo should be lost during the voyage. Decree affirmed.